STATE OF NORTH CAROLINA v. JENNIE CAROL ELLINGTON

No. 7318SC392

(Filed 23 May 1973)

1. Searches and Seizures § 3— informer's tip plus corroborating evidence — probable cause to search

An informant's tip plus corroborating evidence is sufficient to show probable cause to search where (1) the credibility of the informer is bolstered by a plethora of corroborating facts—names, times, descriptions—shown to be true, which in themselves are not of the type likely to circulate in rumor; and (2) the corroborating facts are of such detail as to support the reasonable inference that the informant gathered his information, not from rumor, but from firsthand observation himself. ·

2. Searches and Seizures § 3— probable cause — sufficiency of affidavit

There was probable cause to issue a warrant to search for marijuana where the affidavit alleged that a deputy sheriff in California telephoned Greensboro and informed officers there that, based on a tip from a reliable informer, he had information that two girls were flying into Greensboro at a specified hour with marijuana in their possession; the California officer described the girls' appearance in detail; and the informer's reliability was attested to.

APPEAL by defendant from *Crissman, Judge,* 1 January 1973 Session of GUILFORD Superior Court.

Defendant was convicted of possession of marijuana with intent to distribute and was sentenced to imprisonment for four years. The evidence for the State was to the effect that at 4:00 a.m. on 22 September 1972, the Greensboro police received a telephone call from a deputy sheriff in San Diego, California, telling them that he had been informed that two women, who were described, were flying on Eastern Airlines' Flight 203 from San Diego to Greensboro, and that they were carrying with them marijuana. The deputy described their four pieces of

luggage and the baggage ticket number for each piece. At 10:00 a.m. on 22 September Greensboro police were issued a search warrant. At 11:05 a.m. on 22 September officers saw two women, fitting the description, getting off Eastern Airlines' Flight 203 at Greensboro. These two women picked up four suitcases fitting the telephone description. The two women left the airport with the luggage in an airport limousine, the officers followed, and stopped the car, whereupon they read the warrant to the two women, who were the defendant Jennie Carol Ellington and Patrice Lee Walters. The officers opened the four suitcases after having been told the combination which opened the locks, and found a substance later determined to be marijuana, far in excess of 5 grams.

Since the affidavit upon which the search warrant was issued did not set forth facts upon which the informant based his conclusion that the defendant had marijuana, defendant contended that the warrant was illegally issued without probable cause, and moved to suppress the evidence, which motion was denied.

*Attorney General Robert Morgan by Assistant Attorney General Charles A. Lloyd for the State.*

*Booe, Mitchell, Goodson and Shugart by William S. Mitchell for defendant appellant.*

CAMPBELL, Judge.

Since without the informant's tip the police officers would have had no knowledge of the crime, the reliability of the informer's tip is essential to the validity of the search warrant.

In *Draper v. United States,* 358 U.S. 307, 3 L.Ed. 2d 327, 79 S.Ct. 329 (1959), corroborating evidence gained by police upon independent investigation was held to be sufficient evidence from which to infer the reliability of the informer's tip. In *Draper* an informer advised the police that a certain individual, whose dress, gait and luggage he described, would be arriving on one of two trains, carrying a quantity of heroin. When a man precisely fitting this description did appear, the police arrested him and found heroin. The Supreme Court held that there was probable cause for the arrest without a warrant.

In 1964, without mention of the *Draper* case, the United States Supreme Court formulated a standard for testing prob-

able cause to search based upon an informant's tip. *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509 (1964), provided that an affidavit based on an informant's tip must set forth two things: (1) some of the underlying circumstances from which the police officers concluded that the informant is credible or his information reliable; and (2) some of the underlying circumstances from which the informant based his conclusions about the alleged criminal activity of the defendant.

The Court soon made clear, however, that *Aguilar* did not overrule *Draper.* In *Spinelli v. United States,* 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584 (1969), the court expressly re-affirmed *Draper* and formulated an alternative test to *Aguilar:*

> "The informer's report must first be measured against Aguilar's standards so that its probative value can be assessed. If the tip is found inadequate under Aguilar, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in Aguilar must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration?" 393 U.S. at 415, 21 L.Ed. 2d at 643, 89 S.Ct at 588.

*Spinelli* thus stands for the proposition that even if the two-pronged test of *Aguilar* is not met, the information before the magistrate may be sufficient if, as in *Draper,* it is sufficiently detailed, or sufficiently corroborated, to supply as much trustworthiness as does the *Aguilar* test.

In *Spinelli* an informant relayed information that the defendant was using a designated apartment as the headquarters of a gambling operation. The informant supplied information that defendant was using two telephones with different unlisted numbers, giving those numbers. The authorities confirmed the numbers given, and also included information that Spinelli had a reputation in police circles as a gambler. The court held that this information did not have the indicia of reliability that was present in the *Draper* case, and did not add up to probable cause.

> " . . . In the absence of a statement detailing the manner in which the information was gathered, it is es-

pecially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." 393 U.S. at 416, 21 L.Ed. 2d at 644, 89 S.Ct. at 589.

In *United States v. Harris*, 403 U.S. 573, 29 L.Ed. 2d 723, 91 S.Ct. 2075 (1971), the court used the tip plus corroboration test as an alternative to *Aguilar*, and the court found probable cause in a plurality opinion. The *Harris* affidavit alleged that defendant was dealing in non-taxpaid whiskey based upon information of a person who had himself purchased whiskey from the defendant within the last two weeks. The affidavit contained no underlying circumstances from which to infer the informant's credibility, but nevertheless the court affirmed the validity of the warrant, primarily because the informant claimed to have had firsthand observation, and because his statement was an admission against penal interest.

Two Federal Courts of Appeal, speaking nearly simultaneously on this issue, have concluded that *Harris* is a diminution of the requirement of the *Spinelli* case in finding suitable alternative to *Aguilar*. See *United States v. McNally*, 473 F. 2d 934 (3rd Cir. 1973) and *United States v. Marihart*, 472 F. 2d 809 (8th Cir. 1972).

[1] The tip plus corroborating evidence test satisfies the *Aguilar* requirements where (1) the credibility of the informer is bolstered by a plethora of corroborating facts—names, times, descriptions—shown to be true, which in themselves are not of the type likely to circulate in rumor; and (2) the corroborating facts are of such detail as to support the reasonable inference that the informant gathered his information, not from rumor, but from firsthand observation himself. The inference that the informer observed the facts he relates is permissible. See the concurring opinion of Justice White in *Spinelli v. United States, supra,* at 423, 21 L.Ed. 2d at 647, 89 S.Ct. at 592.

In applying *Spinelli's* alternative test to the facts of the present case, we first apply the *Aguilar* test—the sufficiency of the showing furnished the judicial officer of (1) the underlying circumstances showing the credibility of the informer, and (2) the underlying circumstances from which the informer

reached the conclusions he conveyed in the tip, which here was his statement that the defendant was carrying marijuana.

Here *Aguilar's* first prong is amply satisfied: The affidavit contains the statement that the "informer is 100% reliable, and that information obtained from this same informant recently led to the confiscation of 120,000 Barbiturates recently in New York City." Even in the absence of this statement the informant's reliability may reasonably be inferred from the very nature of his detailed report.

The second prong of the *Aguilar* test is not satisfied, however, because the officer revealed nothing to the issuing magistrate that would indicate the basis of the informer's conclusions. Under the alternative test the question now is whether the informant's tip was sufficiently detailed and corroborated to indicate its probable reliability. We think the test is clearly satisfied here. It is an inference reasonably arrived at from the report that the informant in all probability gathered the information from firsthand observation.

The affidavit presented in support of the search warrant reads:

"C. D. Wade being duly sworn and examined under oath, says under oath that he has probable cause to believe that the above have in their possession certain property, to wit: 25 to 30 kilos of Marijuana, a controlled substance, a crime, to wit: Illegal Possession of Controlled Substance, Marijuana. The property described above is located Greensboro-High Point Regional Airport described as follows: Guilford County, N. C. (See Affidavit). The facts which establish probable cause for the issuance of a search warrant are as follows:

"At 4:00 A.M., 9-22-72, Deputy Sheriff Robert Simmons of the San Diego, California Sheriff's Office, called the Communications Center of the Greensboro Police Department and talked to Operator Thomas. He gave the following information: He advised of the transportation of 25 to 30 kilos of Marijuana being transported by the following subjects: Two W/F's. (1) W/F, 20's, 5'6", 105-11 Lbs., has brown fuzzy hair & was wearing green and blue floor length flowered dress. Poss. traveling by the name of Miss J. Ellington or Miss P. Walters. (2) W/F, 20's, 5'6", 120-130 Lbs., has blonde hair and was wearing short white

rough type fabric dress. Also poss. traveling by one of names aforementioned. They will have a total of 4 suit-cases with them, they will all be large 3-suiter type. Two of them will be Blue Sky-way, 1 will be a brown sky-way, and the other will be a brown Ventura. All of them will have combination locks. The baggage tickets will be as follows 17-33-13, 17-33-14, 17-33-15, 17-33-16. They are enroute to Greensboro from San Diego, their ultimate destination is here. They will be coming into Greensboro-High Point Airport on flight 203 Eastern Airlines.

"Deputy Simmons advises that his informer is 100% reliable, and that information obtained from this same informant recently led to the confiscation of 120,000 Barbiturates recently in New York City.

"Deputy Simmons also advised that he could be reached after 0900 hrs. their time (1200 Hrs.) our time, at the following number 714-297-2848 this would be the Metropolitan Enforcement Detail.

"This affiant, C. D. Wade, has confirmed through Eastern Airlines that subjects using the names above of the suspects, are in fact on Eastern Flight 203 and are expected to arrive at the Greensboro-High Point Regional Airport at 11:07 A.M. our time.

"This affiant also confirmed by telephone that Deputy Simmons is in fact a law enforcement officer with the San Diego, California Sheriff's Office."

[2]  The facts in the instant case being so nearly those of the case of *Draper v. United States, supra,* that case is controlling; and we hold that there was probable cause for the issuance of the search warrant. While *Draper* involved the question of whether the police had probable cause to arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue. *Spinelli v. United States, supra,* note 5.

The affidavit did supply reasonable cause to believe that the luggage to be searched contained the contraband and met the

test of *State v. Campbell,* 282 N.C. 125, 191 S.E. 2d 753 (1972). See also *State v. Staley,* 7 N.C. App. 345, 172 S.E. 2d 293 (1970).

Affirmed.

Judges HEDRICK and VAUGHN concur.