STATE OF NORTH CAROLINA v. HAYWOOD EDWARDS

No. 78

(Filed 26 November 1974)

1. Criminal Law § 84; Searches and Seizures § 3 — search warrant lost — proof of contents by photostatic copy

Where the State's evidence disclosed that the original search warrant was lost, the trial judge properly considered a photostatic

State v. Edwards

copy of the original warrant for the purpose of passing upon the validity of the original.

2. **Searches and Seizures § 3 — when magistrate may issue warrant**

A magistrate issuing a search warrant must have before him circumstances which raise a reasonable ground to believe that the proposed search will reveal the presence of the objects sought upon the premises to be searched and that such objects will aid in the apprehension or conviction of the offender.

3. **Searches and Seizures § 3 — affidavit for warrant — confidential informant — underlying circumstances**

An affidavit stating that "A confidential and reliable informant who has given reliable information says that there is non tax paid whiskey at above location at this time" was insufficient to establish probable cause for issuance of a warrant to search for nontaxpaid whiskey because it did not inform the magistrate of any underlying circumstances from which the informant concluded that nontaxpaid whiskey was where he said it was.

APPEAL by defendant from decision of the North Carolina Court of Appeals, reported in 22 N.C. App. 535, 207 S.E. 2d 352, finding no error in the trial before *Rouse, J.*, at the 27 August 1973 Session of LENOIR Superior Court. Defendant's appeal of right arises from a dissent by Parker, Judge. G.S. 7A-30(2).

Defendant was charged with possession of tax-paid liquor for the purpose of sale in violation of G.S. 18A-7(a)(2). He was tried and convicted in the District Court of Lenoir County, and upon his appeal the case came on for trial *de novo* in the Lenoir County Superior Court, where defendant again entered a plea of not guilty. The State offered evidence which tended to show that deputy sheriffs, armed with a search warrant authorizing search of defendant's premises and a 1965 Chevrolet station wagon for non-tax-paid liquor, went to defendant's home. At this point defendant objected to the introduction of any evidence obtained by the search. Judge Rouse conducted a *voir dire* hearing, concluded that the search was made pursuant to a valid search warrant, and overruled the objection. Thereupon Deputy Sheriff Garris testified that he and the other deputies found four pints of tax-paid bourbon whiskey and four pints of tax-paid gin on the floorboard of the station wagon and two pints of tax-paid bourbon whiskey in the spare-tire section of the vehicle.

Defendant testified and denied any knowledge of the two pints of bourbon found in the spare-tire section and further

denied that he possessed any of the alcoholic beverages for the purpose of sale.

The jury returned a verdict of guilty, and defendant appealed to the North Carolina Court of Appeals from judgment imposed.

*Attorney General James H. Carson, Jr., by Associate Attorney William A. Raney, Jr., for the State.*

*Turner & Harrison, by Fred W. Harrison, for the defendant.*

BRANCH, Justice.

[1]   The Court of Appeals correctly decided that the trial judge properly considered a photostatic copy of the original search warrant for the purpose of passing upon the validity of the original. The State's evidence disclosed that the original search warrant was lost, and in our opinion the introduction of the photostatic copy of the original provided plenary evidence both of the contents of the original and of regularity on its face. *See State v. Cobb,* 250 N.C. 234, 108 S.E. 2d 237; *State v. McMilliam,* 243 N.C. 771, 92 S.E. 2d 202.

Defendant's argument that the evidence resulting from the search was inadmissible because the affidavit upon which the search warrant was issued was insufficient to establish probable cause to search poses a more serious question.

The affidavit upon which the search warrant was issued averred:

"CAPT Stanle [sic] Moore Lenoir County Sheriff's DEPT being duly sworn and examined under oath, says under oath that he has probable cause to believe that Haywood Edwards has on his premises and in his vehicle certain property, to wit: Non Tax Paid Whiskey, The Possesion of which is a crime, to wit: Violation of Liquor laws Apr, [sic] 7, 1973 RT 2 Grifton.

The property described above is located On the Premises and in a 1965 Chevrolet described as follows: A red frame farm house located 8/10 of a mile west of NC 11 on rural unpaved road 1714 and a 1965 Chevrolet station wagon Lic #EZM771. The facts which establish probable cause for the issuance of a search warrant are as follows:

A confidential and reliable informant who has given reliable information says that there is non tax paid whiskey at above location at this time.

s/ STANLEY MOORE, D. S.
Signature of Affiant"

[2] A search warrant will not be issued except upon a finding of probable cause. Both the state and federal decisions require that the issuing magistrate have before him circumstances which raise a reasonable ground to believe that the proposed search will reveal the presence of the objects sought upon the premises to be searched and that such objects will aid in the apprehension or conviction of the offender. *State v. Campbell,* 282 N.C. 125, 191 S.E. 2d 752; *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755.

The United States Supreme Court considered the sufficiency of an affidavit to support issuance of a search warrant in the case of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723. The affidavits upon which the search warrants were based in *Aguilar* and the affidavit in the case *sub judice* are strikingly similar. The affidavit in *Aguilar,* in pertinent part, recited:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."

In *Aguilar* the United States Supreme Court held that the affidavit did not provide a sufficient basis for a finding of probable cause to search and, *inter alia,* stated:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, *the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were,* and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States,* 376 U.S. 528, was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will

be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' *Giordenello v. United States*, [357 U.S. 480]; *Johnson v. United States*, [333 U.S. 10], or, as in this case, by an unidentified informant." (Emphasis ours.)

*Aguilar* was followed by *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637, and in that case the Supreme Court approved the standards set forth in *Aguilar* and further refined the procedures mandated by the Constitution relating to the issuance of search warrants. We quote from that opinion:

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* test without independent corroboration? *Aguilar* is relevant at this stage of the inquiry as well because the tests it establishes were designed to implement the long-standing principle that probable cause must be determined by a 'neutral and detached magistrate,' and not by 'the officer engaged in the often competitive enterprise of ferreting out crime.' *Johnson v. United States*, 333 U.S. 10, 14 (1948). A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone."

In *State v. Campbell, supra,* a search warrant was issued upon an affidavit which in relevant part recited:

"Affiant is holding arrest warrants charging Kenneth Campbell with sale of Narcotics on April 16, 1971 and possession of narcotics on April 16, 1971 and April 28, 1971.

Affiant is holding arrest warrants on M. D. Queensberry for sale of narcotics on April 16, 1971, April 28, 1971 and April 29, 1971. Also affiant has four arrest war-

rants charging Queensberry with four counts of possession of Narcotics.

Affiant is holding arrest warrants charging David Bryan with sale and possession of narcotic drugs on April 1, 1971.

All of the above subjects live in the house across from Ma's Drive-in on Hwy. 55. They all have sold narcotics to Special Agent J. M. Burns of the SBI and are all actively involved in drug sales to Campbell College students; this is known from personal knowledge of affiant, interviews with reliable confidential informants and local police officers."

In *Campbell,* following the rule set forth in *Aguilar,* and citing *Spinelli* and *Vestal,* Justice Huskins, writing for a unanimous Court, stated:

"Probable cause cannot be shown 'by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police.' *United States v. Ventresca,* 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741 (1965). The issuing officer 'must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion. . . .' *Giordenello v. United States,* 357 U.S. 480, 2 L.Ed. 2d 1503, 78 S.Ct. 1245 (1958).

In *Nathanson v. United States,* 290 U.S. 41, 78 L.Ed. 159, 54 S.Ct. 11 (1933), the United States Supreme Court laid down the following rule: 'Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of suspicion or belief is not enough.' (Emphasis added.)

Tested by the constitutional principles stated above, the affidavit in this case is fatally defective. It details no underlying facts and circumstances from which the issuing

officer could find that probable cause existed *to search the premises described. . . .*"

The affidavit in instant case, as in *Aguilar* and *Campbell,* does not contain any semblance of a statement showing underlying circumstances from which the informant concluded that the articles sought were where he declared they were.

In reaching its decision, the Court of Appeals relied upon language taken from *Spinelli v. United States, supra,* and *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed. 2d 723. The language from *Spinelli* is as follows:

" . . . In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

It should be borne in mind that this language is taken out of context and that *Spinelli* in fact approved the standards set forth in *Aguilar* and held that there was not sufficient probable cause for issuance of a search warrant.

The Court of Appeals quoted the following language from *Harris:*

"In evaluating the showing of probable cause necessary to support a search warrant, against the Fourth Amendment's prohibition of unreasonable searches and seizures, we would do well to heed the sound admonition of *United States v. Ventresca,* 380 U.S. 102 (1965):

'[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.

A grudging or negative attitude by reviewing courts
toward warrants will tend to discourage police officers
from submitting their evidence to a judicial officer be-
fore acting.' 380 U.S., at 108."

We are in complete accord with the rationale of this lan-
guage and .heartily approve a rule based upon common sense
and realism instead of one based upon technical requirements
of great specificity. However, neither *Harris* nor *Ventresca*
furnishes guidance for decision in this case since each of those
cases arose upon facts radically different from those presently
before us.

In *Harris* the affidavit upon which the search warrant
authorizing search for illicit liquor was issued stated that
the informant, whom the affiant had found to be a prudent
person, gave affiant a sworn statement (1) that he had pur-
chased illicit whiskey from within accused's residence for a
period of more than two years and had made purchases most
recently within two weeks of the giving of the information,
(2) that he had knowledge of another person who had purchased
illicit whiskey within two days, and (3) that he had seen accused
bring whiskey from outbuildings and deliver it to other per-
sons. In addition the affiant recited facts concerning his knowl-
edge of accused's bad reputation as a trafficker in illicit whiskey.

In *Ventresca* the affidavit which was executed to support
issuance of a search warrant of premises suspected to house
an illicit distillery contained statements by affiant based on his
personal knowledge and based upon information obtained from
other governmental investigators to the effect that within a
month a Pontiac automobile had on four occasions carried loads
of bagged sugar to the house in question, had twice carried tin
cans to the house, and had been loaded from the house with
apparently full five-gallon cans. The investigators simultane-
ously smelled the odor of fermenting mash in front of the house
and heard metallic noises and the sound of a motor or pump
emanating from the house.

Unquestionably in *Ventresca* and *Harris* there were strong
statements in the respective affidavits showing underlying cir-
cumstances upon which the informant based his belief of prob-
able cause. Under these circumstances the Court very properly
refused to invalidate the search warrants; however, we do not
interpret these cases to hold that *Aguilar, Spinelli, Vestal* and

*Campbell* are no longer the law. Neither has our research disclosed any other decision by the United States Supreme Court which overrules the holdings in these decisions.

[3] We conclude that in instant case the search warrant was invalid because the affiant did not inform the magistrate of *any* underlying circumstances from which the *informant* concluded that non-tax-paid whiskey was where he said that it was. Neither does the record disclose that the magistrate was furnished any evidence of probable cause other than that contained in the affidavit. Since there was not sufficient basis for a finding of probable cause to issue the search warrant, the evidence obtained as a result of its issuance was erroneously admitted at trial.

The decision of the Court of Appeals is reversed, and this cause is remanded to that Court for entry of order remanding it to the Superior Court of Lenoir County for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Chief Justice BOBBITT not sitting.